UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA A. HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 15-cv-02694-JCS<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 24, 29 |

## I. INTRODUCTION

Plaintiff Brenda A. Harris brought this action against the Commissioner of the Social Security Administration. Although an Administrative Law Judge ("ALJ") decided that Harris was disabled and entitled to benefits, Harris filed this action seeking review of the disability onset date. When she first applied for benefits, Harris alleged a disability onset date of January 1, 2011. She claims that her attorney amended that date without obtaining her permission and has filed a Motion for Summary Judgment (the "Motion"). In the Motion, Harris contends that the ALJ erroneously decided that she became disabled on August 25, 2011, the amended onset date. In the alternative, Harris contends that the Court should remand her case for consideration of new evidence regarding the alleged impropriety of the onset date's amendment. The Commissioner opposes Harris's motion and has filed a Cross-Motion for Summary Judgment (the "Opposition"). The Commissioner contends that the ALJ did not err and that Harris's new evidence does not support a remand. For the reasons stated below, the Court DENIES Harris's Motion for Summary Judgment and GRANTS the Commissioner's Cross-Motion for Summary Judgment.[2]

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 20, 2017. She is substituted for Carolyn Colvin as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d). This Order refers to Berryhill as the "Commissioner."

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all

## II. BACKGROUND

### A. Harris's Application for Benefits

After first applying protectively on March 14, 2011, Harris submitted an application for disability insurance benefits on August 10, 2011. *See* Administrative Record ("AR," dkt. no. 19) at 22, 95–97. Harris alleged in the application that, on January 1, 2011, she had become unable to work due to a disability and had remained disabled since then. *Id.* at 95. She also alleged that she had last worked on January 1, 2011, and did not plan to resume working. *Id.* at 96. In her disability report, Harris further alleged that that she suffers from several conditions that limit her ability to work, including arthritis, fibromyalgia, left leg and knee problems, back problems, migraines, depression, stress, anxiety, and mood disorders. *See id.* at 127.

The Social Security Administration (the "Administration") denied Harris's application on November 18, 2011. *See id.* at 27. Shortly after the denial, Harris hired an attorney, John R. Heard of Heard & Smith, as her representative for her disability claim. *See id.* at 52–53. Heard then requested reconsideration of Harris's application on her behalf. *See id.* at 47, 55. The Administration denied the application after reconsideration on May 22, 2012. *See id.* at 47. About three weeks later, Harris requested a hearing before an ALJ. *See id.* at 59–60.

On March 5, 2013, the Administration sent a letter notifying Harris that it had scheduled a hearing for April 12, 2013. *See id.* at 68–72. Harris immediately informed the Administration that she had received the notice of her hearing and planned to attend. *See id.* at 86.

In an April 2, 2013, facsimile to Heard regarding Harris's application, an Administration employee stated: "The Judge will grant an OTR on this case set for hearing on 4/12/13 conditioned upon an agreement to amend the alleged onset date to 8/25/11." *Id.* at 195.

On April 4, 2013, Kimberly O. Wyatt, an attorney at Heard & Smith, sent a letter to the ALJ on Harris's behalf. *Id.* at 113; *see also id.* at 53. In the letter, Wyatt stated:

> Ms. Harris has a pending claim for disability insurance benefits. She hereby moves to amend her alleged onset date to August 25, 2011. She has discussed this amendment with her attorney and understands the effects of this amendment.

---

purposes pursuant to 28 U.S.C. § 636(c).

*Id.* at 113. The bottom of the letter lists Harris's home and email addresses, and it indicates that Harris would receive a copy of it. *Id.*

### B. The ALJ's Decision

Two days before Harris's hearing, the ALJ issued a decision granting Harris's application for disability insurance benefits. *See* AR at 22–26. In the decision's introduction, the ALJ described the procedural history of Harris's application for benefits and his determination that Harris was disabled under the act:

> On March 14, 2011, the claimant protectively applied for a period of disability and Disability Insurance Benefits alleging that she had been disabled and unable to work since January 1, 2011, due to physical and mental impairments. The applications [*sic*] was denied, initially, and upon administrative reconsideration. The claimant requested a hearing before an Administrative Law Judge. However, the evidence of record supports a fully favorable decision. Therefore, no hearing has been held. The claimant was represented by John R. Heard, an attorney. [¶] The claimant proposed an amended onset disability date of August 25, 2011. I now accept this as the date which the claimant became disabled under the Social Security Laws and Regulations.

*Id.* at 22 (citations omitted).

### C. Harris's Request for Review by the Administration's Appeals Council

On July 22, 2013, Harris requested that the Social Security Appeals Council review the ALJ's decision finding her disability onset date was August 25, 2011. AR at 196–97. In her request, Harris stated:

> [O]n April 12, 2012 I was asked by my lawyer Kimberly Wyatt if I consented to take the amended decision, and I would not have to go to crt [*sic*]. But the deal was I would loose [*sic*] $7,670.00 which I [*sic*] would be 5 months different I believe. So after that I did question her about the decision. But in the long run the Social Security office took my back pay which was over $19,000. . . . These 6 months would have paid off the debt if it is found truthful that it was my fault and not the Social Security office in Richmond, Calif[ornia]. . . . That is why I do not agree to the Judge's decision and the lawyer I had Ms. Wyatt not a good lawyer and it was played down.

*Id.* at 197.

The Appeals Council "found no reason under [the Administration's] rules to review the Administrative Law Judge's decision" and denied Harris's request for review. *Id.* at 9–11. The

1   Appeals Council further explained that it had considered the reasons that Harris disagreed with the
2   ALJ's decision and found that they did not provide a basis for changing the ALJ's decision. *Id.*
3   at 9–10.

### D.  Harris's Declaration

In support of her Motion, Harris submitted a declaration. Decl. of Brenda Harris ("Harris Decl.," dkt. no. 27). In the declaration, Harris attests that she has been physically disabled for 30 years. *Id.* ¶¶ 3, 5. Her disability stems from rheumatoid arthritis symptoms. *Id.* ¶ 3. Those symptoms began after she injured her knee in a car accident. *Id.* The symptoms cause her pain and limit her mobility. *Id.* Sometime around 1993 or 1994, Harris also started experiencing "ear pain, headaches, gastrointestinal problems, anemia, and overwhelming fatigue." *Id.* ¶ 4. She was diagnosed with Lupus and, despite treatment, her symptoms have worsened. *Id.*

Even though she has been physically disabled for some time, Harris has been employed throughout her life, often working two jobs at once. *Id.* ¶ 5. She chose to continue working to support her children and grandchildren. *Id.* However, in 2011, she became ill, suffered pain, and experienced "anxiety attacks, rheumatoid arthritis, fibromyalgia, depression, stress migraines, left leg and knee problems from the car accident, back problems (herniated disc), anxiety, acid reflux, and insomnia." *Id.* In 2012, after she stopped working, she was also diagnosed with a hypothyroid condition. *Id.* ¶ 5.

Harris's health problems prevented her from continuing to work, and she left her job in January 2011. *Id.* ¶¶ 5–6. On March 14, 2011, she applied for benefits, which were denied on November 21, 2011. *Id.* ¶ 6. After that denial, Harris hired Wyatt as her attorney to represent her in disability proceedings. *Id.* ¶ 7.

The Administration also denied Harris's application on reconsideration, after which Wyatt represented Harris in a request for review by an ALJ. *Id.* A hearing before an ALJ was set for April 12, 2013. *Id.* Wyatt informed Harris that the hearing was important and instructed Harris not to attend it because it would increase the likelihood that the ALJ would grant Harris disability benefits. *Id.* Wyatt provided Harris a form indicating that Harris would not attend the hearing. *Id.* Harris "agreed not to appear if it was more likely for me to get my benefits," signed the form,

4

and returned the form to Wyatt. *Id.*

Addressing the letter in which Wyatt moved to amend Harris's disability onset date, *see* AR at 113, Harris attests:

> I never agreed to amending that date. I did not even know what an onset date was at that time. My attorney never told me. It says that I, the claimant, proposed changing my disability onset date to August 25, 2011 and that I understood the effects of this amendment. This is not true. I have been in pain for many years but I did not apply for disability benefits until I truly needed them. I would never have agreed to such a change even if we had talked about because [*sic*] I was disabled when I applied.

Harris Decl. ¶ 8. Harris further attests:

> My attorney did not get my approval before making this proposed change. I think that's why she didn't want me to attend the hearing. I did not even know that she sent that letter in to the ALJ . . . until I filed this civil action in federal court and received a copy of the administrative record. Although my email address and mailing address are on this letter, I did not receive a copy of the letter when it was sent.

*Id.* ¶ 9.

After Harris did not receive the total benefit award that she had requested in her original application, she tried to contact Wyatt, but the calls went unanswered and were not returned. *Id.* ¶ 10. Harris then contacted a legal aid office and a lawyer explained to her that the disability onset date had been changed. *Id.* Harris concludes that she was harmed by Wyatt's failure to represent her interests during their attorney-client relationship and that "it would have been better if [she] had appeared at that hearing and answered the questions of the ALJ [herself]." *Id.* ¶ 11.

### E. The Motions

#### 1. Harris's Motion

Harris moves for summary judgment. *See* Pl.'s Mot. for Summ. J. ("Mot.," dkt. no. 24).[3] As described previously, Harris submitted her declaration as new evidence with the Motion and claims that the new evidence establishes that she was disabled on January 1, 2011. *See id.* at 2, 5–6; *see also* Harris Decl. Harris lodges three contentions in support of the Motion.

---

[3] For clarity, the Court cites to the parties' moving papers in accordance with the page numbers assigned by the ECF docket.

5

First, Harris contends that the ALJ erred by failing to develop the record fully with respect to the original onset date of her symptoms and disability. *See* Mot. at 4. She argues that, when the ALJ determined the onset date of her disability, the evidence on that issue was ambiguous and inadequate. *Id.* She asserts that she submitted "substantial medical evidence in support of [her] claim" of disability on the original onset date, but her lawyer's letter to the ALJ requesting that the onset date be amended, which was not supported by medical evidence or legal reasoning, served as the basis for the ALJ's disability onset date determination. *Id.* at 4–5. She further asserts that the ALJ had a duty to evaluate all medical records that she submitted and investigate the discrepancy between the onset date that she asserted in her original claim and the onset date asserted in her lawyer's letter. *Id.* at 5.

Second, Harris contends that the ALJ erred by failing to call a medical expert to provide testimony interpreting the medical evidence in the record. *Id.* She argues that the ALJ's duty to call such an expert arises when the onset date of a disability is unclear and must be inferred from the evidence. *Id.* (citing *Armstrong v. Comm'r of the Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). She also argues that, where there is a conflict between two different dates that are asserted as the onset date of a disability, a medical expert's opinion is required and the date alleged by the claimant should be used if it is consistent with the evidence. *Id.* (citing SSR 83-20 (1983)).

Third, Harris contends alternatively that, under 42 U.S.C. § 405(g), the Court should remand the case for consideration of her declaration as new evidence. *See id.* She argues that the evidence of her attorney's unpermitted changes to her benefits application is material evidence, requiring reconsideration of her application. *See id.* at 6. According to Harris, that materiality stems from her attorney's instruction that she not attend her administrative hearing and also from her attorney's submission of an amended onset date without Harris's consent. *See id.* She further argues that good cause for a remand exists to consider the evidence of her attorney's alleged misconduct because it demonstrates that she was disabled on January 1, 2011—the original onset date. *See id.*

**2. The Commissioner's Opposition and Cross-Motion**

In response, the Commissioner filed the Opposition and also seeks summary judgment. *See* Opp'n and Counter-Mot. ("Opp'n," dkt. no. 29). The Commissioner contends that the Court should affirm the ALJ's decision, as it was favorable to Harris and in accordance with the Commissioner's rules. *Id.* at 4.

The Commissioner argues that the Administration used Harris's alleged onset date as the starting point of the analysis and, because the agency accepted that onset date, "no further development was authorized." *Id.* at 4–6. Responding to Harris's contention that the ALJ failed to develop the record fully, the Commissioner argues that no such duty arose in Harris's case for two related reasons: (1) that duty is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of the evidence"; and (2) the ALJ has no duty to develop the record with respect to issues that a claimant fails to raise. *Id.* at 5 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Sefcik v. Colvin*, No. ED CV 14-850-PJW, 2016 WL 626739, at *4 (C.D. Cal. Feb. 16, 2016)). The Commissioner further argues that "[o]nly if the ALJ determines a subsequent onset date must the judge develop the record and, in some cases, call expert witnesses," but the amendment of Harris's onset date did not trigger such a duty in this case. *Id.* at 6–7.

The Commissioner also argues that Harris's appeal of the ALJ's decision constitutes a claim of ineffective assistance of counsel, which does not exist in the context of Social Security proceedings. *Id.* at 7. According to the Commissioner, there is no Sixth Amendment right to counsel in Social Security proceedings, and ineffective assistance of counsel cannot serve as a basis for relief. *Id.* (citing, *inter alia*, *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985) (per curiam)).

Turning to the administrative record, the Commissioner also argues that the record does not support a finding that Harris was disabled before August 2011. *Id.* at 4–5, 8–10. According to the Commissioner, the medical record shows Harris's medical examinations were "largely normal" and Harris's doctors did not recommend physical therapy because her impairments did not affect her activities of daily living or ability to work. *Id.* at 10. The Commissioner notes that,

7

1   although Harris relies upon her declaration to support her motion, she fails to cite evidence in the
2   Administrative Record that supports her claim that she became ill in early 2011. *Id.* The
3   Commissioner further asserts that the Administrative Record contradicts that claim. *Id.* The
4   Commissioner also notes that, in May 2011, Harris informed her doctor that she was able to work
5   part-time, and it was in August 2011 that Harris told her doctors that her condition had worsened.
6   *Id.* Thus, the Commissioner concludes, the amended disability onset date is supported by the
7   record. *Id.*

8   The Commissioner further argues that the record contains employment records proving
9   that Harris had continued working through the first quarter of 2011 and, as a result, she was not
10  disabled under agency regulations. *Id.* at 9 (citing 20 C.F.R. § 404.1520(a)(4)(i)). The
11  Commissioner points to evidence that, according to the Commissioner, supports a finding that
12  Harris had worked as a cashier for Walgreens during the first quarter of 2011 and she earned over
13  $6,000. *Id.* at 4 (citation omitted). The Commissioner also asserts that, in a prior case, Harris had
14  been granted benefits that were terminated because she was working as a cashier. *Id.* The
15  Commissioner opines that "the amended onset date alleviated the concern that [Harris] was
16  seeking benefits for time in which she was receiving wages." *Id.* at 10.

17  Finally, the Commissioner contends that Harris's declaration does not constitute new
18  evidence warranting a remand. *See id.* at 5. The Commissioner argues that the declaration is not
19  material, i.e., it is not sufficiently persuasive to affect the substantial evidence supporting the
20  ALJ's decision. *Id.* at 8 (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–63
21  (9th Cir. 2012)). The Commissioner also emphasizes that Harris's declaration does not alter the
22  conclusion that the ALJ followed the Commissioner's regulations in determining Harris's claim,
23  and the declaration in fact conflicts with the record in three respects: (1) Harris was on notice of
24  the onset date's amendment because the ALJ's decision stated the amended onset date and copies
25  of the decision were sent to Harris and Wyatt; (2) Harris admitted to discussing the amended
26  decision in her letter to the Appeals Council; and (3) Wyatt's letter to Harris states that they
27  discussed the amendment and its effects. *Id.* at 5, 8–9. The Commissioner concludes that
28  evidence, law, and policy support the Court's affirmance of the ALJ's decision. *Id.* at 5.

8

### 3. Harris's Reply

In reply, Harris responds only to the Commissioner's factual contentions. Response (dkt. no. 30). Addressing the assertion that she received improper benefits payments during a prior disability period, Harris states that it was "[r]uled claimant was without fault in causing the overpayment of disability insurance benefits for the period . . . ." *Id.* at 2. Contesting the accuracy of the assertion that she received $6,250 in wages during 2011, she asserts that she received a settlement from her past employer for $10,000, which, after taxes, became $6,500. *Id.* She further asserts that the unemployment benefits that she received were proper. *Id.*

Harris also claims that the letter in which Wyatt stated that she and Harris had discussed amending the disability onset date with her attorney is false—Harris never agreed to amend her onset date, and she never received a copy of the letter as it suggests. *Id.*

Addressing her physical health, Harris claims that she has medical evidence that supports her declaration, noting that she was seeing several other doctors on a regular basis and possessed medical records from a radiology provider. *Id.* at 3. She also claims that, as of January 1, 2011, she was incapable of standing for eight hours, as her job required, and was informed that she would be made a part-time employee. *Id.* She further asserts that she was having digestive issues and, because she felt sick, she quit her job on January 1, 2011. *Id.*

Harris disputes characterizations of her statements regarding her ability to do work while she was seated. *Id.* at 4. She also asserts that another doctor had opined that the meniscus in each of her knees was torn. *Id.* She further disputes the Commissioner's suggestion that she could work after August 2011, the characterization of her desire to receive a larger benefits award, and the notion that she had a conversation with Wyatt regarding the benefits award that she received. *Id.* at 4–5. She concludes:

> Something here to me is not right it should be reviewed that is why I am appealing the decision on the onset date and the amount that was decided from the overpayment from the Social Security Appeals Council. Ms. Wyatt said to "well make sure the next time when you work tell the Social Security office". After her comment I hung up the call and I never heard from her again, the overpayment was over turned in on [*sic*] August 27, 2013.

*Id.* at 5.

## III. ANALYSIS

### A. Legal Standard

When reviewing the Commissioner's decision to deny benefits, the Court "may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). Courts "are constrained to review the reasons the ALJ asserts" and "cannot rely on independent findings" to affirm the ALJ's decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001)). However, a reviewing court cannot substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996) (citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).

If the Court identifies defects in the administrative proceeding or the ALJ's conclusions, it may remand for further proceedings or for a calculation of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014). Likewise, the Court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

### B. The ALJ Did Not Err

Harris claims that the ALJ committed legal error in two respects. First, she contends that the ALJ was required to develop the medical record further and consider whether Harris had become disabled before the amended disability onset date. Second, she contends that the ALJ was required to obtain testimony from a medical expert regarding whether Harris had become disabled before the amended disability onset date. Harris's contentions lack merit.

As the Ninth Circuit has stated, it remains the duty of a claimant seeking Social Security benefits to prove that she is disabled—she cannot "improperly shift her own burden to the ALJ." *Mayes*, 276 F.3d at 459 (citing 42 U.S.C. § 423(d)(5) (Supp. 2001); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)). Congress has so provided: "[a]n individual shall not be considered to

10

be under a disability unless [she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A) (2015). The Commissioner's regulations also recognize that it is a claimant's duty to raise issues and present evidence related to the disabilities that they allege. *See* 20 C.F.R. § 416.912(a), (c). Those regulations instruct claimants as follows:

> In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.

20 C.F.R. § 416.912(a).

However, as the Ninth Circuit has explained, "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes*, 276 F.3d at 459. An ALJ's duty to develop a claimant's medical record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459–60 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Congress has further defined that duty's parameters by statute:

> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months *for any case in which a determination is made that the individual is not under a disability.*

42 U.S.C. § 423(d)(5)(B) (2015) (emphasis added). The Commissioner's regulations also recognize that duty: "Before we make a determination that you are *not* disabled, we will develop your complete medical history . . . ." 20 C.F.R. § 416.912(d) (emphasis added). Thus, the law and the Commissioner's regulations provide that it is a claimant's burden to raise an issue that requires an ALJ to develop a medical record more fully,[4] and that duty to develop a medical record only

---

[4] Other district courts in this circuit have recognized that it remains a claimant's duty to raise issues implicating an ALJ's duty to develop a medical record more fully. *See*, *e.g.*, *Sefcik*, 2016

11

arises when an ALJ finds that a claimant is *not* disabled.[5]

Here, Harris failed to raise the issue that she became disabled before August 25, 2011. More precisely, the amendment of Harris's disability onset date effectively conceded that her disability did not in fact begin on January 1, 2011—as she had alleged originally—or at any other time prior to August 25, 2011. The Social Security Regulations make the effect of an amended disability onset date clear. Those regulations instruct an ALJ to begin the process of determining the onset dates of disabilities that are nontraumatic in origin as follows:

> The starting point in determining the date of onset of disability is the individual's statement as to when disability began. This is found on the disability application and on the [Disability Report Form]. A change in the alleged onset date may be provided in a [Report of Contact Form], a letter, another document, or the claimant's testimony at a hearing.

SSR 83-20. Harris has not alerted the Court to any authority, and the Court has found no such authority, supporting the proposition that an ALJ must consider dates preceding a claimant's alleged onset date when rendering a disability benefits decision. Rather, review of the law confirms that the ALJ adhered to the Commissioner's regulations—beginning his analysis on the alleged onset date of record and deciding that Harris was in fact disabled as of that date.

Although Harris claims that the amendment of her disability onset date occurred as a result of her attorney's impropriety, there was no evidence of Wyatt's alleged impropriety before the ALJ when the decision was rendered. To the contrary, in the letter requesting the amendment, Wyatt averred that she and Harris had discussed the amendment. Harris has also acknowledged that she and Wyatt discussed the amendment in her request for review by the Appeals Council.

---

WL 626739, at *4 (finding no duty to have a claimant undergo a medical examination or to call a medical expert when the claimant's attorney did not argue that additional evidence was necessary or would be helpful); *Ortiz v. Astrue*, No. 11-cv-04285-LHK, 2013 WL 1149805, at *8 (N.D. Cal. Mar. 19, 2013) ("[T]he ALJ had no duty to further develop the record by independently exploring the possibility of a medical condition that [the claimant] did not assert until three months after the ALJ's decision."); *Littlejohn v. Astrue*, No. ED CV 07-1614-SH, 2009 WL 700031, at *3 (C.D. Cal. Mar. 13, 2009) ("On the other hand, the ALJ does not have a duty to develop the record with regard to issues that the plaintiff herself has never raised.").
[5] As the Commissioner acknowledges, the duty to develop the record can also arise when the ALJ determines a disability onset date after the date alleged by a claimant. *See* Opp'n at 5 ("Only if the ALJ determines a subsequent onset date must the judge develop the record and, in some cases, call an expert witness.").

Furthermore, the record demonstrates that the ALJ suggested the amended disability onset date in the first place.[6] In light of Wyatt's representation that Harris requested amendment of her disability onset date to the date suggested by the ALJ, the ALJ had no duty to develop the record further for the purpose of considering whether Harris became disabled before the alleged onset date as amended. *See* 20 C.F.R § 416.1510(a) ("Your representative may, on your behalf—(1) Obtain information about your claim to the same extent that you are able to do; (2) Submit evidence; (3) Make statements about facts and law; and (4) Make any request or give any notice about the proceedings before us.").

To find otherwise would, in effect, impart a duty on ALJs to monitor the relationships between social security claimants and their attorneys in all disability claims. No such general duty to monitor exists. *See id.* In fact, the Commissioner's regulations limit an ALJ's authority to inquire into a claimant's attorney-client relationship. *See* 20 C.F.R. § 416.912(b)(2) ("[E]vidence does not include: [¶] (i) Oral or written communications between you and your representative that are subject to the attorney-client privilege, unless you voluntarily disclose the communication to us."). Furthermore, as the Commissioner argues, the Ninth Circuit has observed that a disability-benefits claimant, like the usual plaintiff in a civil case, has no constitutional right to the effective assistance of counsel. *See Greenwalt-Baltrons v. Astrue*, 346 F. App'x 194, 195 (2009) (citing *Nicholson*, 767 F.2d at 1427) ("We conclude that Greenwalt-Baltrons' ineffective assistance claim is without merit."). Thus, an ALJ's duty to develop a claimant's medical record did not arise during Harris's administrative proceedings.

Likewise, an ALJ's duty to call a medical expert did not arise. Although Harris cites to it, *Armstrong* instructs that this duty does not arise unless a claimant challenges the disability onset date found by an ALJ. *See* 160 F.3d at 590. In *Armstrong*, an ALJ determined that a claimant had become disabled on the date of the claimant's application, but the claimant had alleged an earlier

---

[6] As the Commissioner notes, evidence in the record supporting the ALJ's suggestion included a May 10, 2011, letter from Harris to her pain management doctor in which she stated that she could work part time and explained, "I can sit yes. I have 25 years of state service clerical work. I can do that type of work." AR at 589. Other evidence included medical records of examinations after January 1, 2011, that recorded normal results, no need for physical therapy or medical imaging, and moderate home activity. *See id.* at 404, 439, 443.

disability onset date and the ALJ did not obtain testimony from a medical expert. *See id.* at 588–89. The Ninth Circuit explained that, "[i]f the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Id.* at 590 (citing *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991); *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991)) (internal quotation marks omitted). Finding that the claimant's disability onset date was unclear from the record, the Ninth Circuit reasoned that the claimant's application date was not necessarily the onset date for his disability, and there was significant evidence of the claimant's mental health issues that had not been evaluated sufficiently. *Id.* The Ninth Circuit concluded that the claimant's 30-year history of deteriorating health problems required the ALJ "to call a medical expert to aide in determining the date of onset." *Id.* However, the Ninth Circuit qualified its holding, stating:

> [W]e do not relieve . . . claimants of their ultimate burden to prove disability before expiration of disability insured status. [The claimant] must still prove he was disabled while he was insured. SSR 83-20 only requires that the ALJ assist the claimant in creating a complete record. Rather than just inferring an onset date, which would deny claimant benefits, SSR 83-20 requires that the ALJ create a record which forms a basis for that onset date. . . . [A]fter the ALJ has created a record and has a basis for selecting an onset date, the claimant who wishes to *challenge* that date bears the burden of proof.

*Id.* (emphasis added).

It remained Harris's burden to prove that she was disabled, and to raise any issue of law to the ALJ, and to challenge the onset date found by the ALJ. However, she failed to challenge the ALJ's disability-onset-date finding and to raise the issue that further medical testimony was needed to evaluate her medical record properly. To find that the ALJ erred would relieve Harris of those burdens in contravention of *Armstrong*. *See id*; *see also Lair-Del Rio v. Astrue*, 380 F. App'x 694, 697–98 (9th Cir. 2010) (holding that a claimant who had failed to provide reliable medical records did not meet her burden of proof).

Furthermore, as stated above, the ALJ reviewed the evidence of record, suggested the amended onset date, and granted Harris's application for benefits upon her agreement to the

14

amended onset date. As another court in this district observed, requiring expert testimony in circumstances where a disability onset date is not put at issue "would drive ALJs to conduct vague fishing expeditions on claimants' behalves. The ALJ has an obligation to assist in developing the record, but the claimant has the burden of proving that he or she became disabled . . . ." *Harrison v. Astrue*, No. 10-cv-03711-WHA, 2011 WL 2039069, at *4 (N.D. Cal. May 25, 2011). In sum, the ALJ evaluated Harris's application properly and determined her disability onset date in accordance with the Commissioner's regulations.

### C. Harris's Declaration Does Not Warrant a Remand

Harris contends that, regardless of whether the ALJ erred, the new evidence that she submitted in her declaration warrants a remand to the Administration for further proceedings. The Commissioner disagrees, arguing that remand is inappropriate because Harris's declaration is immaterial and in conflict with the record. Although every claim that an attorney has misled a client is concerning, review of the record demonstrates that the Commissioner is correct: Harris's declaration conflicts with the record and remand is inappropriate.

Congress set forth district courts' limited power to remand an action to the Administration in 42 U.S.C. § 405(g). The Ninth Circuit has further defined when a district court may order remand:

> Under 42 U.S.C. § 405(g), in determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier. *Booz* governs the materiality inquiry, applying a de novo standard to this question of law. On the other hand, *Clem* governs the good cause inquiry, applying an abuse of discretion standard to the question of fact.

*Mayes*, 276 F.3d at 462 (citing *Booz v. Sec'y of Health & Hum. Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984); *Clem*, 894 F.2d at 332).

In *Booz*, the Ninth Circuit adopted the *reasonable possibility* test, which provides that newly submitted evidence "is sufficiently material to require a remand, 'only where there is a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before [her].'" *Booz*, 276 F.3d at 1380 (quoting

15

*Dorsey v. Heckler*, 702 F.2d 597, 604–05 (5th Cir. 1983)) (emphasis omitted). The Ninth Circuit has since elaborated that, "[t]o be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute." *Mayes*, 276 F.3d at 462.

    Under this test, Harris's declaration is not material. It directly conflicts with her prior statements of record. In her declaration, Harris has attested, "I never agreed to amending [the onset] date. I did not even know what an onset date was at that time. My attorney never told me." Harris Decl. ¶ 8. This claim conflicts directly with her statement to the Appeals Council: "I was asked by my lawyer Kimberly Wyatt if I consented to take the amended decision, and I would not have to go to crt [*sic*]." AR at 197. In her statement to the Appeals Council, Harris also acknowledged that she expected to lose money as a result of the amendment, but was later surprised by the amount of money that she lost. *See id.* This demonstrates that she was not only aware of the amendment itself, but also the possibility that it would cause financial consequences. Harris has failed to point to any additional evidence showing that she was coerced or deceived into amending her disability onset date.[7] *See Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (citing 20 C.F.R. § 416.1540(c)(1)) ("Petitioner has not pointed to any evidence that she was coerced or deceived into stipulating to the closed period" after "counsel requested to amend the period under review to the closed period."). "Absent such a showing, the attorney's conduct is imputed to [her]." *Id.* (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). Because none of the medical evidence to which Harris alludes in her declaration suggests that the ALJ would have found a different disability onset date, there is no reasonable possibility that the evidence alleged in Harris's declaration would alter the ALJ's decision. Therefore, the declaration is immaterial and remand is inappropriate.

---

[7] Regarding Harris's claim that she had been misled by Wyatt, the Court notes that the Commissioner has issued regulations governing the conduct and responsibilities for representatives of Social Security claimants and sanctioning those representatives for violations. *See* 20 C.F.R. §§ 416.1540 (providing "certain affirmative duties and prohibited actions" governing representatives in Social Security cases including a representative's prohibition from "deceiv[ing] or knowingly mislead[ing] a claimant, or prospective claimant or beneficiary, regarding benefits or other rights under the Act."), 416.1545 (providing that the Administration may initiate an inquiry into a representative's alleged violation of § 416.1540 and impose sanctions). The Appeals Council's decision suggests that Harris's claim did not warrant Wyatt's investigation or sanctioning under these regulations.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Harris's Motion for Summary Judgment and GRANTS the Commissioner's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 15, 2017

JOSEPH C. SPERO
Chief Magistrate Judge